**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case: 1:25-mj-00181 |
| : | Assigned To: Judge Harvey, G. Michael |
| v. : | Assign. Date: 8/27/2025 |
| : | Description: COMPLAINT W/ARREST WARRANT |
| **MELVINA RAWLINGS,** : | |
| **GERRIKA MISSOURI,** : | |
| : | |
| Defendants. : | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. I, Shamus Nealon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

2. I submit this affidavit in support of a criminal complaint, charging Melvina RAWLINGS with unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

3. I further submit that there is probable cause to charge Gerrika MISSOURI and Melvina RAWLINGS with Conspiracy to Distribute and Possess with Intent to Distribute 100 grams or more of a mixture and substance containing a detectable amount of Phencyclidine ("PCP") and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iv), (b)(1)(B)(vi), and 846.

### AFFIANT BACKGROUND

4. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been in this position since December of 2021. I am currently assigned to the Safe Streets Task Force ("SSTF") in the Washington, D.C., Field Office ("WFO"). The SSTF investigates violent gangs, crimes of violence, and drug trafficking in the D.C. metropolitan region. Prior to my assignment

to the SSTF, I was trained through the Basic Field Training Course at the FBI's training academy in Quantico, Virginia. Through my employment with the FBI, I have gained knowledge in the use of various investigative techniques including, but not limited to: analyzing telephone pen register and caller identification system data; analyzing data from cellular service providers; conducting court-authorized electronic surveillance; and the execution of search and arrest warrants, including warrants authorizing the search of electronic information stored at premises controlled by third-party providers.

5.   Unless otherwise stated, the conclusions and beliefs I express in this affidavit are based on my training, experience, and knowledge of the investigation, and reasonable inferences I've drawn therefrom.

## PROBABLE CAUSE

6.   Since ▮▮▮▮▮ the Federal Bureau of Investigation ("FBI") has led an investigation into a narcotics trafficking conspiracy, involving the distribution of fentanyl, PCP, and other narcotics in the vicinity of the ▮▮▮▮▮

7.   On ▮▮▮▮▮ a federal grand jury in Washington, D.C. returned an indictment in case number ▮▮▮▮▮ (TJK), charging ▮▮▮▮▮ others, *inter alia*, with Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of a Mixture and Substance Containing a Detectable Amount of PCP and 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iv), (b)(1)(A)(vi), stemming from their involvement in the aforementioned narcotics trafficking conspiracy, between on or about July 2024 to present day.

8.   Beginning in August 2024, an MPD undercover officer (hereafter, "UC") began

making a series of controlled purchases of fentanyl and PCP from Eric PRATHER (hereafter, "PRATHER"), also known as "E" and "E. Marbury." As described further below, during the investigation, the UC exclusively contacted PRATHER at ▮▮▮▮ ("TARGET TELEPHONE 1" or "TT1") to purchase from PRATHER fentanyl and PCP.[1]

9. Over the course of eighteen controlled buys from August 2024 to July 2025, PRATHER sold the UC an approximate total of 904 grams of fentanyl and 1797 grams of PCP.

10. On February 4, 2025, the Honorable Randolph D. Moss of the District Court for the District of Columbia authorized wire intercepts of TT1, which was utilized by PRATHER, in Case No. ▮▮▮▮. Wire intercepts began on February 5, 2025, and ceased on March 6, 2025. Continued wire intercepts of TT1 were reauthorized by Judge Moss on March 7, 2025. Wire intercepts began on March 10, 2025, and ceased on April 8, 2025.[2]

### Gerrika MISSOURI

11. During the wire communication interceptions for TT1, investigators learned that Eric PRATHER utilized 2921 Knox Place SE, Apartment 201, the residence of Gerrika MISSOURI, as another stash location for his suspected narcotics. At the time law enforcement was intercepting TT1 wire communications, MISSOURI was using the telephone number ▮▮▮▮ to communicate with PRATHER. Intercepted communications between TT1 and ▮▮▮▮ routinely consisted of PRATHER's apparent narcotics resupply requests of MISSOURI, primarily spoken in code (drug slang) consistent with drug trafficking. In addition to the

---

[1] At various times during the investigation, the UC was shown PRATHER's Washington, D.C. driver license photo. The UC positively identified PRATHER as the person who sold the UC the narcotics.

[2] On April 29, 2025, in case number ▮▮▮▮, Judge Moss authorized the initial interception of wire communications to and from both Thomas HANCOCK's phone number, ▮▮▮▮ (hereafter "TARGET TELEPHONE 2" or "TT2"), and Darryl RILEY's phone number, ▮▮▮▮ ("TARGET TELEPHONE 3" or "TT3"). The initial interceptions of TT2 and TT3's wire communications commenced on April 30, 2025, and concluded on May 29, 2025.

intercepted communications, surveillance video captured MISSOURI walking between ▇▇ ▇▇▇▇▇▇ and PRATHER's stash location, located at ▇▇▇▇▇▇▇ following PRATHER's requests for resupplies.

12. For example, on February 9, 2025, a series of intercepted communications between PRATHER and MISSOURI outlined an apparent resupply of suspected PCP and fentanyl. During the initial call at 10:40 a.m. (TT1, Session 522), PRATHER asked, "Can you bring the water over here for me? Just one. I'm a little thirsty. I left it in the refrigerator." Your Affiant notes that "water" is a common code word for PCP. Approximately three minutes later, MISSOURI was observed on surveillance video exiting ▇▇▇▇▇▇▇, walking to ▇▇▇▇▇▇▇, and then promptly returning to 2921 Knox Place SE.

13. At approximately 12:41 p.m. (TT1, Session 536), PRATHER asked MISSOURI to bring suspected fentanyl. PRATHER asked, "Uh, hey, that other stuff that Darren like," "Yeah; bring the cake mix that Darren[3] like," elaborating, "[t]he one in the short bag." Approximately four minutes later, at 12:45 a.m., surveillance video captured MISSOURI exiting 2921 Knox Place SE, entering 2926 Knox Place SE, and returning to 2921 Knox Place SE. At approximately 2:05 p.m. (TT1, Session 554), PRATHER asked MISSOURI, "I need you to bring the shit Darren like. All of it." and "It should be a brand new one (unintelligible). Like what you brung me? It's another one. That wasn't in there. I just don't remember what bag it was in." Approximately four minutes later, surveillance video captured MISSOURI exiting 2921 Knox Place SE, entering 2926 Knox Place SE, and then returning to 2921 Knox Place SE.

---

[3] During other intercepted calls and the UC controlled narcotics purchase on February 11, 2025, PRATHER referenced testing his fentanyl on an individual named "Darren," who your Affiant believes to be an individual apparently struggling with drug addiction. In your Affiant's training and experience, narcotics traffickers will sometimes use individuals to test their product prior to selling the controlled substances to customers.

14. On February 11, 2025, at approximately 3:49 p.m., law enforcement intercepted a call between PRATHER and Darryl RILEY (TT1, Session 1063), during which PRATHER asked RILEY for the "deer park," or PCP. The next day, on February 12, 2025, RILEY called PRATHER at approximately 2:25 p.m. (TT1, Session 1148), advising he was about to pull up. Surveillance showed RILEY driving up to ▮▮▮▮▮▮▮▮ to apparently resupply PRATHER.

15. Later that same day, at 4:04 p.m., PRATHER called MISSOURI (TT1, Session 1164), asking her to "bring them bag of capsules over here when you get a chance? Them little perfumes. They at the bottom the . . . one of them paper bags I just don't remember." In your Affiant's training and experience, the description of capsules is consistent with small vials of PCP.

### *Melvina RAWLINGS*

16. From a review of TT1 intercepted communications and controlled buys, law enforcement further identified that RAWLINGS was among PRATHER's coconspirators.

17. On February 17, 2025, law enforcement intercepted a phone call between RAWLINGS and PRATHER about recent activity on the 2900 block of Knox Place SE, and their coordination of their trafficking activities (TT1, Session 1957). At the beginning of the conversation, PRATHER suggested to RAWLINGS that they move their operations to another location to begin selling PCP at two vials for $10 ("two for ten") to draw customers to that new location. Once the new location was established, PRATHER would increase the price to one vial for $10 ("one for ten"). The conversation then shifted to discussing another drug dealer and his practices selling PCP, as well as PRATHER and RAWLINGS's frustration with that person's selling practices.

18. Law enforcement also conducted two controlled buys from RAWLINGS in June 2025. First, on June 12, 2025, at approximately 10:19 a.m., an undercover officer ("UC") called

RAWLINGS to establish a meeting time, and RAWLINGS stated that she was "out" on the block. Twenty-five minutes later, the UC met RAWLINGS in the ▓▓▓▓▓▓▓ RAWLINGS accessed the back ▓▓▓▓▓▓▓—a vehicle previously observed by law enforcement in the vicinity of ▓▓▓▓▓▓▓—and provided the UC a one-half ounce (approximately 9.805 grams) vial of PCP in exchange for $160, which was submitted to the DEA Mid-Atlantic Laboratory for testing and tested positive for PCP.

19. Five days later, on June 17, 2025, at approximately 10:25 a.m., the UC called RAWLINGS again to establish a meeting time. RAWLINGS stated that she had an interview at 11:00 a.m. and would call the UC after she finished. Approximately one hour later, the UC asked if RAWLINGS was available, and she said that she was back on the block. At approximately 12:06 pm, the UC made contact with RAWLINGS in front of 2926 Knox Place. The UC requested PCP and a sample of "down." RAWLINGS accessed the backseat of the blue Toyota minivan and retrieved a glass bottle containing an amber colored liquid that contained approximately ten grams (a half ounce) of PCP. The UC then requested a sample of "down." RAWLINGS then went into 2926 Knox Place SE with another associate; shortly thereafter, RAWLINGS exited 2926 Knox Place and provided a clear container with a white powdery substance to the UC, which was submitted to the DEA Mid-Atlantic Laboratory for testing, weighed approximately 0.569 grams, and tested positive for fentanyl.

### *August 26, 2025 Residential Warrant Executions and Arrests*

20. On August 22, 2025, the Honorable Moxila A. Upadhyaya issued a Rule 41 search warrant (▓▓▓▓▓▓▓), authorizing the search of multiple residences and vehicles, including MISSOURI's residence at ▓▓▓▓▓▓▓.; and RAWLING's residence at ▓▓▓▓▓▓▓

21. On August 26, 2025, law enforcement executed the search warrant at MISSOURI's residence, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Within MISSOURI's residence, law enforcement recovered a loaded Draco-style handgun, approximately 108.98 grams of a white powdery substance, with packaging, which field tested positive for fentanyl, and approximately 160.75 grams of a brown powdery substance, with packaging, which field tested positive for eutylone. During the course of the search, there was a powdery substance located in the water of the toilet with a clear baggie on the floor next to the toilet. A sample of the water and the off-white powdery substance was collected and field tested positive for fentanyl.

22. Within RAWLING's residence, at 1000 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ law enforcement recovered two loaded handguns, approximately $14, 208 in cash; approximately 33.53 grams, with packaging, of a white powdery substance in a brown-colored vial, which field-tested positive for ocaine; and approximately 43.24 grams, with packaging, of a white powdery substance in assorted storage containers with packaging. The white powdery substances field tested positive for cocaine.

23. Inside RAWLINGS' vehicle, a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ law enforcement recovered approximately 81.22 grams, with packaging, of a white powdery substance in assorted vials, which field-tested positive for cocaine; approximately 41.35 grams, with packaging, of a white powdery substance in two vials, which field-tested positive for cocaine; approximately 54.8 grams, with packaging, of a white powdery substance packaged inside purple/orange vials within a plastic bag, which field-tested positive for cocaine; approximately 785.33 grams, with packaging, of a white powdery substance in a baggy within a pink container, which field-tested positive for cocaine; and approximately 971.78 grams, with packaging, of assorted vials containing amber-colored liquid, which field-tested positive for PCP.

24. Further, your Affiant knows that RAWLINGS is prohibited from possession of a firearm due to a prior felony conviction in D.C. Superior Court case number ███████, for Assault with a Dangerous Weapon and she received a sentence of 20 months imprisonment, all suspended, and 12 months of supervised release. Accordingly, RAWLINGS had knowledge that she was previously convicted of a crime punishable by imprisonment of a term more than one year.

25. Your Affiant knows there are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearms described above necessarily traveled in interstate commerce before their recovery in the District of Columbia.

## CONCLUSION

26. For the reasons set forth above, I submit that probable cause exists to believe that on or about August 26, 2025, while in the District of Columbia, RAWLINGS was in possession of a firearm despite being prohibited therefrom, in violation of 18 U.S.C. § 922(g)(1).

27. Moreover, for the reasons set forth above, I submit that probable cause exists to believe that, between on or about July 2024 to present, while in the District of Columbia, RAWLINGS and MISSOURI were involved in a Conspiracy to Distribute and Possess with Intent to Distribute 100 grams or more of a mixture and substance containing a detectable amount of PCP and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iv), (b)(1)(B)(vi), and 846.

Respectfully submitted,

_____

Shamus Nealon, Special Agent
Federal Bureau of Investigation

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 and 41(d)(3) via telephone on August 27, 2025.


_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE